PLATZER, SWERGOLD, KARLIN,
LEVINE, GOLDBERG & JASLOW, LLP
*COUNSELORS AT LAW*

**EXHIBIT B**

# PLATZER, SWERGOLD, KARLIN, LEVINE, GOLDBERG & JASLOW, LLP

*COUNSELORS AT LAW*

1065 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10018
TELEPHONE 212.593.3000
FACSIMILE 212.593.0353

WWW.PLATZERLAW.COM

PLAZA 1000 AT MAIN STREET,
SUITE 208
VOORHEES, NEW JERSEY 08043
TELEPHONE 856.782.8644

☐ *If checked, reply to New Jersey Office*

April 23, 2007

Computer Solvers, Inc
5269 Greenwich Road Suite 101
Virginia Beach, VA 23465
Attn: Jerome N Greenberg

Re: Sterling National Bank
vs: Computer Solvers, Inc. and Jerome N Greenberg and Terri G Noel
Our File No. 1118-504
Amount of Claim: $ 456,249.01

Dear Mr. Greenberg:

Our office has been retained by Sterling National Bank to prosecute their claim against you in the above-referenced matter.

We must insist that payment be made immediately to the undersigned. Failing to receive payment within the next ten days, we will have no other alternative but to commence suit and seek recovery of the above balance, plus interest and court costs.

Very truly yours,

PLATZER, SWERGOLD, KARLIN,
LEVINE, GOLDBERG & JASLOW, LLP

Howard M. Jaslow

HMJ:kr

PLATZER, SWERGOLD, KARLIN,
LEVINE, GOLDBERG & JASLOW, LLP
*COUNSELORS AT LAW*

# EXHIBIT C

# STERLING NATIONAL BANK

## GUARANTY OF ALL LIABILITIES AND SECURITY AGREEMENT

Date: October 8, 1999

IN CONSIDERATION of any existing Liabilities (as hereinafter defined) of the within named Obligor to Sterling National Bank (hereinafter called Bank) and in order to induce Bank, in its sole discretion, at any time(s) hereafter, to make loans or advances, or extend credit in any other form or manner, including renewals or extensions of time, purchase or discount any notes, bills receivable, drafts, acceptances, checks or other instruments or evidences of indebtedness upon which Obligor is or may become liable as maker, endorser, acceptor or otherwise or to issue letters of credit or create bankers' acceptances for the account of the Obligor or extend the time, or make any other financial accommodation in any form at any time to or for the within named Obligor, the undersigned (which term, and any context in which it may be used herein, shall be deemed to be singular in sense if this agreement is not signed by more than one party) hereby absolutely and unconditionally guarantee the full and prompt payment when due, by acceleration or otherwise, and at all times thereafter, to Bank, its successors, transferees, and assigns, of any and every liability or liabilities in any amount, of any nature and in any form, now existing or hereafter arising, of or from

(Insert Name and Address of Obligor)

Computer Solvers, Inc.
5269 Greenwich Rd. Suite 101
Virginia Beach, VA 23465

(hereinafter called Obligor) to Bank, including without limiting the generality of the foregoing, all negotiable and other instruments and all obligations of any other nature or form and any interest, charges, fees or penalties due thereon, whether absolute or contingent, direct or indirect, secured or unsecured, matured or unmatured, upon or with respect to which Obligor may be liable and which may at any time be acquired by Bank and any and all expenses including attorneys' fees which may be incurred by Bank in collecting all or any of the Liabilities and/or enforcing any rights hereunder (all hereinafter, whether one or more than one, called Liabilities).

The undersigned agree that they shall be jointly and severally bound hereunder; that the Liabilities and the obligations of any party with respect thereto may at any time or times and in whole or in part be increased, decreased, renewed, extended, accelerated, modified, compromised, transformed or released by Bank as it may deem advisable, without notice to or further assent by the undersigned and without affecting the obligations of the undersigned hereunder; and that Bank may pursue any of its remedies hereunder, upon any of the Liabilities or otherwise against any party or security at any time or times as it may deem advisable, without being obligated to resort to any other party or security unless and until it shall deem it advisable to do so. The undersigned hereby waive all demands for performance or of payment of the Liabilities, any presentment for payment, any protest and all notices of presentment, non-payment and protest of all negotiable or other paper upon which Obligor may be liable, all notices of acceptance of this guaranty, notice of adverse change in Obligor's financial condition or of any other fact which might materially increase credit risk of Bank or undersigned, and all demands, and notices if any, which Bank might otherwise be required to give in connection with the exercise of any of its rights hereunder upon any of the Liabilities or otherwise. The undersigned agree that Bank may, at its option, sue separately hereon or upon any one or more of the Liabilities and hereby waive any defense in any action that Bank has split its cause of action.

The undersigned further agree that, if Obligor or any of the undersigned should die, fail, dissolve or be dissolved, become insolvent, make any assignment for the benefit of creditors, call a meeting of any creditors, appoint a committee of any creditors, or a liquidating agent, offer to, or receive from, any creditors a composition or extension of any of their indebtedness, make, or send notice of an intended bulk sale, assign, pledge, mortgage or grant a security interest in any account receivable or other property, suspend payment, wholly or partly suspend or liquidate their usual business, fail after demand, oral or otherwise, to furnish any financial statements or information or to permit inspection of books or records of account, make any misrepresentation to Bank for the purpose of obtaining credit or an extension of credit, or in the event of failure to pay, withhold, collect or remit any tax or tax deficiency when assessed or due, or if any tax assessment is made by the United States or any state, or any subdivision thereof or in the event any procedure for the enforcement of a money judgment under Article 52 of the New York Civil Practice Law and Rules or amendments thereto be commenced, or fail to pay any obligation, whether in writing or not, when due, or if Obligor or undersigned or any one of them is unable to pay debts as they mature, or if a judgment should be rendered or order of attachment, injunction or execution issued against, or any receiver, trustee, conservator or custodian appointed of or for Obligor or any of the undersigned, or any property of any of them, or any proceeding is instituted against Obligor or any of the undersigned alleging the inability to pay debts as they mature, or be the subject of a bankruptcy, insolvency, reorganization or similar proceeding, or for composition, arrangement, extension or any other relief, or if there should be any change in the condition or affairs, financial or otherwise, of Obligor or of any of the undersigned, as in Bank's opinion may increase its credit risk respecting the Liabilities, or if Obligor should fail to pay any of Liabilities to Bank, or if any statement or representation made to Bank by Obligor or any of the undersigned in any financial statement or otherwise should in the opinion of Bank be untrue or misleading or omit to state any fact necessary in order to make the same, in the light of the circumstances under which it was made, not misleading, then, and upon the occurrence of any such event, unless Bank shall otherwise elect, all the Liabilities of Obligor to Bank shall, without notice or demand, become immediately due and payable and shall forthwith be paid by the undersigned, notwithstanding any time or credit allowed under any of the Liabilities or any instrument evidencing the same.

As collateral security for the obligations and liabilities of undersigned hereunder, as well as for the payment of any and all other liabilities and obligations of undersigned to Bank for another or others and claims of every nature and description of Bank against undersigned, whether now existing or hereafter incurred, originally contracted with Bank and/or with another or others and now or hereafter owing to or acquired in any manner in whole or in part by Bank or in which Bank may acquire a participation, whether contracted by undersigned alone or jointly and/or severally with another or others, absolute or contingent, direct or indirect, secured or unsecured, matured or unmatured, undersigned does hereby grant Bank a security interest in, and does hereby pledge, assign, transfer and set over to and deposit with Bank or its agents the following property of which the undersigned is the absolute owner:

Further, undersigned does hereby give to Bank a security interest in and a continuing lien and/or right of offset upon and against all debts, credits and credit balances owing from Bank or any of its affiliates to each of the undersigned, and, further, a security interest in and a continuing lien upon and/or right of offset against all money, securities, uncollected deposits, collection items, choses in action, interest, premium and dividends thereon, and avails of any thereof, and any other property of any nature whatsoever of each of the undersigned which may for any purpose be actually or constructively held by, or in transit to Bank or any of its affiliates, agents, correspondents or the sub-agents of any of them; or which may be placed in any safe deposit box leased by Bank to undersigned; and upon all proceeds and products thereof and renewals and substitutions therefor; that in the case of securities, Bank may register at any time, in Bank's discretion, without notice, any of the property in Bank's name or in the name of Bank's nominee and Bank or its nominee may exercise all voting and corporate rights with respect thereto as if the absolute owner thereof; that undersigned authorizes Bank to sign and file financing statements at any time with respect to the property without the signature of either the Obligor or undersigned and undersigned will at any time on Bank's request sign financing statements, security agreements or other agreements with respect to the property and, on the failure of undersigned so to do, Bank is authorized as the agent of undersigned to sign any such instrument; that Bank may at its option apply any or all of the aforesaid properties on account of any of the Liabilities or other obligations and liabilities of undersigned to Bank as it may elect; that Bank shall be under no obligation to resort first to any additional collateral securing the Liabilities or other obligations and liabilities of undersigned to Bank or to accord pro rata treatment with respect thereto; that Bank may exercise any and all of its other rights hereunder, upon any of the Liabilities or otherwise, and, upon the occurrence of any default hereunder or with respect to any of the Liabilities or other obligations and liabilities of undersigned to Bank, Bank may forthwith collect, receive, appropriate and realize upon any and all collateral security, or any part thereof, and/or may forthwith sell, assign, give option or options to purchase, and deliver said collateral security, or any part thereof, or any property whatever of any kind to which it may be entitled as collateral security for the Liabilities or other obligations and liabilities of undersigned to Bank, in one or more parcels, at public or private sale or sales, at any exchange, brokers' board or at any of Bank's offices or elsewhere, at such prices as it may deem best, for cash, or on credit, or for future delivery, without assumption of any credit risk, with the right to Bank upon any such sale or sales, public or private, to purchase the whole or any part of said collateral security so sold. The undersigned further agree that Bank may be the purchaser at any such sale without any responsibility in that or any other event on Bank's part for any inadequacy of price; and that, if the avails of any security therefor be applied on account of any of the Liabilities or other obligations and liabilities of undersigned to Bank, neither undersigned nor any other party shall have any right of subrogation to Bank's right in any other security for any of the Liabilities or other obligations and liabilities of undersigned to Bank, and undersigned hereby waive all rights, if any, of subrogation with respect to such other security and all rights, if any, of contribution from Bank by reason of any such application or otherwise. Bank may apply the net proceeds of any such collection, receipt, appropriation, realization or sale, after deducting all costs and expenses of every kind incurred therein or incidental to the care, safekeeping or otherwise of said collateral security or in any way relating to the rights of Bank hereunder, including counsel fees, to the payment in whole or in part, in such order as Bank may elect, of one or more of the Liabilities or their obligations and liabilities of undersigned to Bank, whether then due or not due, absolute or contingent, making proper rebate for interest or discount on items not then due and accounting for the surplus, if any, to the undersigned, who shall remain liable to Bank for the payment of any deficiency with legal interest. Bank will give undersigned notice of the time and place of any public sale of the collateral security or of the time after which any private sale or any other intended disposition thereof is to be made by sending notice, as herein provided, at least five days before the time of the sale or disposition, which provisions for the undersigned and Bank agree are reasonable. No such notice need be given by Bank with respect to collateral security which is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market. In addition to all other rights and remedies, Bank shall have the remedies of a secured party under the New York Uniform Commercial Code. The undersigned agree that, whenever an attorney is used to collect or enforce this agreement or to enforce, declare or adjudicate any rights or obligations under this agreement, whether by suit or by any other means whatsoever, a reasonable attorney's fee shall be paid by each of the undersigned against whom this guaranty agreement or any obligation or right thereunder is sought to be enforced, declared or adjudicated.

The undersigned acknowledge that this guaranty agreement and obligations of the undersigned hereunder are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this guaranty agreement and obligations of undersigned hereunder or the obligations of any other person or party (including, without limitation, Obligor) relating to this guaranty agreement or the obligations of undersigned hereunder or otherwise with respect to the Liabilities or other obligations and liabilities of undersigned to Bank. This guaranty agreement sets forth the entire agreement and understanding of Bank and undersigned, and undersigned absolutely, unconditionally and irrevocably waive any and all rights to assert any defense, set-off, counterclaim or cross-claim of any nature whatsoever with respect to this guaranty agreement or the obligations of undersigned or the obligations of any other person or party (including, without limitation, Obligor) relating to this guaranty agreement or the obligations of undersigned under this guaranty agreement or otherwise with respect to the Liabilities or other obligations and liabilities of undersigned to Bank in any action or proceeding brought by the holder hereof to collect the Liabilities or any portion thereof, or to enforce, the obligations of undersigned under this guaranty agreement. The undersigned acknowledge that no oral or other agreements, understandings, representations or warranties exist with respect to this guaranty agreement or with respect to the obligations of undersigned hereunder, except as specifically set forth in this guaranty agreement.

The undersigned hereby waive and release any rights that undersigned may now possess or hereafter acquire, whether by operation of law or through contract, to obtain indemnity, reimbursement or repayment from Obligor of any amount paid by the undersigned to Bank pursuant to this guaranty agreement, whether by way of subrogation, assignment, indemnity, reimbursement, implied contract or otherwise, including, without limitation, any defense arising by reason of any cessation from any cause whatsoever of the liability of Obligor, either in whole or in part, to Bank. In the event that Obligor shall be the subject of a bankruptcy, insolvency or similar proceeding, the undersigned agree to make no claim against Obligor or the estate of Obligor arising out of or in relation to the performance of this guaranty agreement by undersigned and to execute and deliver to the debtor-in-possession, trustee, receiver or other appropriate person such releases and waivers of any claims available to the undersigned as shall be required to evidence this waiver and release.

The execution and delivery hereafter by undersigned to Bank of a new agreement of guaranty shall not terminate, supersede or cancel this agreement, unless expressly provided therein, and all rights and remedies of Bank hereunder or under any agreement of guaranty hereafter executed and delivered to Bank by undersigned shall be cumulative and may be exercised singly or concurrently. The undersigned further agree that this guaranty agreement shall continue in full force and effect until notice of termination thereof shall have been given in writing, actually delivered to Bank, and receipt thereof acknowledged in writing, signed by Bank, provided, however, that such notice shall not become effective as to Liabilities or other obligations and liabilities of undersigned to Bank unpaid on the date of receipt of such notice, together with any subsequent extensions or renewals of such Liabilities or other obligations and liabilities of undersigned to Bank and all other obligations arising therefrom, until all such Liabilities or other obligations and liabilities of undersigned shall have been paid in full to Bank; that all of Bank's rights hereunder shall continue until the same shall have been paid in full to Bank; that none of the provisions of this guaranty agreement shall be waived, modified or changed orally, or otherwise than in writing signed by the duly authorized officers of Bank and undersigned; that there are no oral understandings between Bank and undersigned in any wise varying, contradicting or amplifying the terms hereof; that waiver by Bank of any provision hereof on any one or more occasions shall not constitute a waiver thereof on any other occasion; that no delay on the part of Bank or any other holder hereof in exercising any power or right hereunder shall operate as a waiver of any such power or right; nor shall any single or partial exercise of any power or right hereunder preclude other or further exercise thereof or the exercise of any other power or right. No executory agreement unless in writing and signed by Bank, and no course of dealing between undersigned and Bank shall be effective to change or modify or to discharge in whole or in part this guaranty agreement. The undersigned agree that this guaranty agreement shall continue to be effective or be reinstated, as the case may be, if at any time payment or any part thereof, of the Liabilities or any other obligations or liabilities of undersigned to Bank is rescinded or must otherwise be restored or returned by Bank upon the insolvency, bankruptcy or reorganization of Obligor, or otherwise, all as though such payment has not been made. This guaranty agreement shall be construed in accordance with the laws of the State of New York and any provision hereof which may prove unenforceable under any law shall not affect the validity of any other provision hereof. The undersigned consent to the jurisdiction of any local, state or federal court located within the State of New York and irrespective of whether undersigned now or hereafter are resident or non-resident of the State of New York, hereby waive personal service of any and all process and consent that all such service of process shall be made by certified or registered mail, return receipt requested, directed to undersigned at the address of undersigned set forth below or to the last known address of undersigned in the records of Bank and service so made shall be complete ten (10) days after the same has been posted as aforesaid; and all the terms, provisions and conditions of this guaranty agreement shall be binding upon the undersigned, their respective executors, administrators, successors and assigns.

*The undersigned, in any litigation (whether or not arising out of or relating to the Liabilities or any security therefor) in which Bank and any of them shall be adverse parties, waive trial by jury and the right to interpose any defense based upon any Statue of Limitations or any claim of laches and set-off or counterclaim of any nature or description.*

IN WITNESS WHEREOF, the undersigned have signed, sealed and delivered this instrument as of the date hereinabove set forth.

(Individuals sign below)                                           (Corporation or Partnerships sign below)        (SEAL)

_____  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                             _____
Jerome N. Greenberg         SSN                                    (Name of Corporation or Partnership)
549 Wingate Rd
DeRidder, LA 70634                                                 By:_____
Address                                                                                        Title

                                                                   By:_____
_____                                                              Title
                            SSN

                                                                   _____
_____                                                              TIN
Address

                                                                   _____
                                                                                    Address

STATE OF NEW YORK ) S.S.:
COUNTY OF        )

LEONARD M. IMPERIALE
Notary Public, State of New York
No. 43-4649686
Qualified in Richmond County
Term Expires June 30, 2001

On the 8 day of November 1996, before me came Jerome N. Ginsburg to me known to be the individual described in, and who executed the foregoing instrument, and acknowledged that he executed the same.

_____
Notary Public, State of NEW YORK


STATE OF NEW YORK ) S.S.:
COUNTY OF        )

On the       day of      ,      , before me came
to me known to be a partner of_____, the partnership mentioned and described in and which executed the foregoing instrument, and the said partner duly acknowledged to me that he executed said instrument for and on behalf of and with the authority of the said partnership for the uses and purposes therein mentioned.

_____
Notary Public, State of


STATE OF NEW YORK ) S.S.:
COUNTY OF        )

On the       day of      ,      , before me came
to me known who, being by me duly sworn, did depose and say that  he resides at
that  he is the       of       the
corporation described in, and which executed the foregoing instrument of guaranty; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that   he signed h name thereto by like order.

_____
Notary Public, State of


GP-F1201 (Rev. 9/99)

PLATZER, SWERGOLD, KARLIN,
LEVINE, GOLDBERG & JASLOW, LLP
*COUNSELORS AT LAW*

**EXHIBIT D**

# STERLING NATIONAL BANK

## GUARANTY OF ALL LIABILITIES AND SECURITY AGREEMENT

Date: October 8, 1999

IN CONSIDERATION of any existing Liabilities (as hereinafter defined) of the within named Obligor to Sterling National Bank (hereinafter called Bank) and in order to induce Bank, in its sole discretion, at any time(s) hereafter, to make loans or advances, or extend credit in any other form or manner, including renewals or extensions of time, purchase or discount any notes, bills receivable, drafts, acceptances, checks or other instruments or evidences of indebtedness upon which Obligor is or may become liable as maker, endorser, acceptor or otherwise or to issue letters of credit or create bankers' acceptances for the account of the Obligor or extend the time, or make any other financial accommodation in any form at any time to or for the within named Obligor, the undersigned (which term, and any context in which it may be used herein, shall be deemed to be singular in sense if this agreement is not signed by more than one party) hereby absolutely and unconditionally guarantee the full and prompt payment when due, by acceleration or otherwise, and at all times thereafter, to Bank, its successors, transferees, and assigns, of any and every liability or liabilities in any amount, of any nature and in any form, now existing or hereafter arising, of or from

(Insert Name and Address of Obligor)

Computer Solvers, Inc.
5269 Greenwich Rd. Suite 101
Virginia Beach, VA 23465-2

(hereinafter called Obligor) to Bank, including without limiting the generality of the foregoing, all negotiable and other instruments and all obligations of any other nature or form and any interest, charges, fees or penalties due thereon, whether absolute or contingent, direct or indirect, secured or unsecured, matured or unmatured, upon or with respect to which Obligor may be liable and which may at any time be acquired by Bank and any and all expenses including attorneys' fees which may be incurred by Bank in collecting all or any of the Liabilities and/or enforcing any rights hereunder (all hereinafter, whether one or more than one, called Liabilities).

The undersigned agree that they shall be jointly and severally bound hereunder; that the Liabilities and the obligations of any party with respect thereto may at any time or times and in whole or in part be increased, decreased, renewed, extended, accelerated, modified, compromised, transformed or released by Bank as it may deem advisable, without notice to or further assent by the undersigned and without affecting the obligations of the undersigned hereunder; and that Bank may pursue any of its remedies hereunder, upon any of the Liabilities or otherwise against any party or security at any time or times as it may deem advisable, without being obligated to resort to any other party or security unless and until it shall deem it advisable to do so. The undersigned hereby waive all demands for performance or of payment of the Liabilities, any presentment for payment, any protest and all notices of presentment, non-payment and protest of all negotiable or other paper upon which Obligor may be liable, all notices of acceptance of this guaranty, notice of adverse change in Obligor's financial condition or of any other fact which might materially increase credit risk of Bank or undersigned, and all demands, and notices if any, which Bank might otherwise be required to give in connection with the exercise of any of its rights hereunder upon any of the Liabilities or otherwise. The undersigned agree that Bank may, at its option, sue separately hereon or upon any one or more of the Liabilities and hereby waive any defense in any action that Bank has split its cause of action.

The undersigned further agree that, if Obligor or any of the undersigned should die, fail, dissolve or be dissolved, become insolvent, make any assignment for the benefit of creditors, call a meeting of any creditors, appoint a committee of any creditors, or a liquidating agent, offer to, or receive from, any creditors a composition or extension of any of their indebtedness, make, or send notice of an intended bulk sale, assign, pledge, mortgage or grant a security interest in any account receivable or other property, suspend payment, wholly or partly suspend or liquidate their usual business, fail after demand, oral or otherwise, to furnish any financial statements or information or to permit inspection of books or records of account, make any misrepresentation to Bank for the purpose of obtaining credit or an extension of credit, or in the event of failure to pay, withhold, collect or remit any tax or tax deficiency when assessed or due, or if any tax assessment is made by the United States or any state, or any subdivision thereof or in the event any procedure for the enforcement of a money judgment under Article 52 of the New York Civil Practice Law and Rules or amendments thereto be commenced, or fail to pay any obligation, whether in writing or not, when due, or if Obligor or undersigned or any one of them is unable to pay debts as they mature, or if a judgment should be rendered or order of attachment, injunction or execution issued against, or any receiver, trustee, conservator or custodian appointed of or for Obligor or any of the undersigned, or any property of any of them, or any proceeding is instituted against Obligor or any of the undersigned alleging the inability to pay debts as they mature, or be the subject of a bankruptcy, insolvency, reorganization or similar proceeding, or for composition, arrangement, extension or any other relief, or if there should be any change in the condition or affairs, financial or otherwise, of Obligor or of any of the undersigned, as in Bank's opinion may increase its credit risk respecting the Liabilities, or if Obligor should fail to pay any of Liabilities to Bank, or if any statement or representation made to Bank by Obligor or any of the undersigned in any financial statement or otherwise should in the opinion of Bank be untrue or misleading or omit to state any fact necessary in order to make the same, in the light of the circumstances under which it was made, not misleading, then, and upon the occurrence of any such event, unless Bank shall otherwise elect, all the Liabilities of Obligor to Bank shall, without notice or demand, become immediately due and payable and shall forthwith be paid by the undersigned, notwithstanding any time or credit allowed under any of the Liabilities or any instrument evidencing the same.

As collateral security for the obligations and liabilities of undersigned hereunder, as well as for the payment of any and all other liabilities and obligations of undersigned to Bank for another or others and claims of every nature and description of Bank against undersigned, whether now existing or hereafter incurred, originally contracted with Bank and/or with another or others and now or hereafter owing to or acquired in any manner in whole or in part by Bank or in which Bank may acquire a participation, whether contracted by undersigned alone or jointly and/or severally with another or others, absolute or contingent, direct or indirect, secured or unsecured, matured or unmatured, undersigned does hereby grant Bank a security interest in, and does hereby pledge, assign, transfer and set over to and deposit with Bank or its agents the following property of which the undersigned is the absolute owner:

Further, undersigned does hereby give to Bank a security interest in and a continuing lien and/or right of offset upon and against all debts, credits and credit balances owing from Bank or any of its affiliates to each of the undersigned, and, further, a security interest in and a continuing lien upon and/or right of offset against all money, securities, uncollected deposits, collection items, choses in action, interest, premium and dividends thereon, and avails of any thereof, and any other property of any nature whatsoever of each of the undersigned which may for any purpose be actually or constructively held by, or in transit to Bank or any of its affiliates, agents, correspondents or the sub-agents of any of them; or which may be placed in any safe deposit box leased by Bank to undersigned; and upon all proceeds and products thereof and renewals and substitutions therefor; that in the case of securities, Bank may register at any time, in Bank's discretion, without notice, any of the property in Bank's name or in the name of Bank's nominee and Bank or its nominee may exercise all voting and corporate rights with respect thereto as if the absolute owner thereof; that undersigned authorizes Bank to sign and file financing statements at any time with respect to the property without the signature of either the Obligor or undersigned and undersigned will at any time on Bank's request sign financing statements, security agreements or other agreements with respect to the property and, on the failure of undersigned so to do, Bank is authorized as the agent of undersigned to sign any such instrument; that Bank may at its option apply any or all of the aforesaid properties on account of any of the Liabilities or other obligations and liabilities of undersigned to Bank as it may elect; that Bank shall be under no obligation to resort first to any additional collateral securing the Liabilities or other obligations and liabilities of undersigned to Bank or to accord pro rata treatment with respect thereto; that Bank may exercise any and all of its other rights hereunder, upon any of the Liabilities or otherwise, and, upon the occurrence of any default hereunder or with respect to any of the Liabilities or other obligations and liabilities of undersigned to Bank, Bank may forthwith collect, receive, appropriate and realize upon any and all collateral security, or any part thereof, and/or may forthwith sell, assign, give option or options to purchase, and deliver said collateral security, or any part thereof, or any property whatever of any kind to which it may be entitled as collateral security for the Liabilities or other obligations and liabilities of undersigned to Bank, in one or more parcels, at public or private sale or sales, at any exchange, brokers' board or at any of Bank's offices or elsewhere, at such prices as it may deem best, for cash, or on credit, or for future delivery, without assumption of any credit risk, with the right to Bank upon any such sale or sales, public or private, to purchase the whole or any part of said collateral security so sold. The undersigned further agree that Bank may be the purchaser at any such sale without any responsibility in that or any other event on Bank's part for any inadequacy of price; and that, if the avails of any security therefor be applied on account of any of the Liabilities or other obligations and liabilities of undersigned to Bank, neither undersigned nor any other party shall have any right of subrogation to Bank's right in any other security for any of the Liabilities or other obligations and liabilities of undersigned to Bank, and undersigned hereby waive all rights, if any, of subrogation with respect to such other security and all rights, if any, of contribution from Bank by reason of any such application or otherwise. Bank may apply the net proceeds of any such collection, receipt, appropriation, realization or sale, after deducting all costs and expenses of every kind incurred therein or incidental to the care, safekeeping or otherwise of said collateral security or in any way relating to the rights of Bank hereunder, including counsel fees, to the payment in whole or in part, in such order as Bank may elect, of one or more of the Liabilities or their obligations and liabilities of undersigned to Bank, whether then due or not due, absolute or contingent, making proper rebate for interest or discount on items not then due and accounting for the surplus, if any, to the undersigned, who shall remain liable to Bank for the payment of any deficiency with legal interest. Bank will give undersigned notice of the time and place of any public sale of the collateral security or of the time after which any private sale or any other intended disposition thereof is to be made by sending notice, as herein provided, at least five days before the time of the sale or disposition, which provisions for the undersigned and Bank agree are reasonable. No such notice need be given by Bank with respect to collateral security which is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market. In addition to all other rights and remedies, Bank shall have the remedies of a secured party under the New York Uniform Commercial Code. The undersigned agree that, whenever an attorney is used to collect or enforce this agreement or to enforce, declare or adjudicate any rights or obligations under this agreement, whether by suit or by any other means whatsoever, a reasonable attorney's fee shall be paid by each of the undersigned against whom this guaranty agreement or any obligation or right thereunder is sought to be enforced, declared or adjudicated.

The undersigned acknowledge that this guaranty agreement and obligations of the undersigned hereunder are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this guaranty agreement and obligations of undersigned hereunder or the obligations of any other person or party (including, without limitation, Obligor) relating to this guaranty agreement or the obligations of undersigned hereunder or otherwise with respect to the Liabilities or other obligations and liabilities of undersigned to Bank. This guaranty agreement sets forth the entire agreement and understanding of Bank and undersigned, and undersigned absolutely, unconditionally and irrevocably waive any and all rights to assert any defense, set-off, counterclaim or cross-claim of any nature whatsoever with respect to this guaranty agreement or the obligations of undersigned or the obligations of any other person or party (including, without limitation, Obligor) relating to this guaranty agreement or the obligations of undersigned under this guaranty agreement or otherwise with respect to the Liabilities or other obligations and liabilities of undersigned to Bank in any action or proceeding brought by the holder hereof to collect the Liabilities or any portion thereof, or to enforce, the obligations of undersigned under this guaranty agreement. The undersigned acknowledge that no oral or other agreements, understandings, representations or warranties exist with respect to this guaranty agreement or with respect to the obligations of undersigned hereunder, except as specifically set forth in this guaranty agreement.

The undersigned hereby waive and release any rights that undersigned may now possess or hereafter acquire, whether by operation of law or through contract, to obtain indemnity, reimbursement or repayment from Obligor of any amount paid by the undersigned to Bank pursuant to this guaranty agreement, whether by way of subrogation, assignment, indemnity, reimbursement, implied contract or otherwise, including, without limitation, any defense arising by reason of any cessation from any cause whatsoever of the liability of Obligor, either in whole or in part, to Bank. In the event that Obligor shall be the subject of a bankruptcy, insolvency or similar proceeding, the undersigned agree to make no claim against Obligor or the estate of Obligor arising out of or in relation to the performance of this guaranty agreement by undersigned and to execute and deliver to the debtor-in-possession, trustee, receiver or other appropriate person such releases and waivers of any claims available to the undersigned as shall be required to evidence this waiver and release.

The execution and delivery hereafter by undersigned to Bank of a new agreement of guaranty shall not terminate, supersede or cancel this agreement, unless expressly provided therein, and all rights and remedies of Bank hereunder or under any agreement of guaranty hereafter executed and delivered to Bank by undersigned shall be cumulative and may be exercised singly or concurrently. The undersigned further agree that this guaranty agreement shall continue in full force and effect until notice of termination thereof shall have been given in writing, actually delivered to Bank, and receipt thereof acknowledged in writing, signed by Bank, provided, however, that such notice shall not become effective as to Liabilities or other obligations and liabilities of undersigned to Bank unpaid on the date of receipt of such notice, together with any subsequent extensions or renewals of such Liabilities or other obligations and liabilities of undersigned to Bank and all other obligations arising therefrom, until all such Liabilities or other obligations and liabilities of undersigned shall have been paid in full to Bank; that all of Bank's rights hereunder shall continue until the same shall have been paid in full to Bank; that none of the provisions of this guaranty agreement shall be waived, modified or changed orally, or otherwise than in writing signed by the duly authorized officers of Bank and undersigned; that there are no oral understandings between Bank and undersigned in any wise varying, contradicting or amplifying the terms hereof; that waiver by Bank of any provision hereof on any one or more occasions shall not constitute a waiver thereof on any other occasion; that no delay on the part of Bank or any other holder hereof in exercising any power or right hereunder shall operate as a waiver of any such power or right; nor shall any single or partial exercise of any power or right hereunder preclude other or further exercise thereof or the exercise of any other power or right. No executory agreement unless in writing and signed by Bank, and no course of dealing between undersigned and Bank shall be effective to change or modify or to discharge in whole or in part this guaranty agreement. The undersigned agree that this guaranty agreement shall continue to be effective or be reinstated, as the case may be, if at any time payment or any part thereof, of the Liabilities or any other obligations or liabilities of undersigned to Bank is rescinded or must otherwise be restored or returned by Bank upon the insolvency, bankruptcy or reorganization of Obligor, or otherwise, all as though such payment has not been made. This guaranty agreement shall be construed in accordance with the laws of the State of New York and any provision hereof which may prove unenforceable under any law shall not affect the validity of any other provision hereof. The undersigned consent to the jurisdiction of any local, state or federal court located within the State of New York and irrespective of whether undersigned now or hereafter are resident or non-resident of the State of New York, hereby waive personal service of any and all process and consent that all such service of process shall be made by certified or registered mail, return receipt requested, directed to undersigned at the address of undersigned set forth below or to the last known address of undersigned in the records of Bank and service so made shall be complete ten (10) days after the same has been posted as aforesaid; and all the terms, provisions and conditions of this guaranty agreement shall be binding upon the undersigned, their respective executors, administrators, successors and assigns.

*The undersigned, in any litigation (whether or not arising out of or relating to the Liabilities or any security therefor) in which Bank and any of them shall be adverse parties, waive trial by jury and the right to interpose any defense based upon any Statue of Limitations or any claim of laches and set-off or counterclaim of any nature or description.*

IN WITNESS WHEREOF, the undersigned have signed, sealed and delivered this instrument as of the date hereinabove set forth.

(Individuals sign below)                                    (Corporation or Partnerships sign below)        (SEAL)

_Terri D Noel_   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                                _Computer Solver Inc_
Terri G. Noel          SSN                                  (Name of Corporation or Partnership)
433 Caren Drive
Virginia Beach, VA 23452-3511                               By: _____
_____                                        Title
         Address
                                                            By: _____
_____                                        Title
         SSN
                                                            _____
_____                                            TIN
        Address

                                                            _____
                                                                   Address

STATE OF NEW YORK    ) S.S.:
COUNTY OF            )

On the 27th day of October, 1999, before me came Terri D. Noel
to me known to be the individual described in, and who executed the foregoing instrument, and acknowledged that he executed the same.

My Commission Expires December 31, 1999

_Susu m Fort_
Notary Public, State of Virginia


STATE OF NEW YORK    ) S.S.:
COUNTY OF            )

On the        day of         ,         , before me came
to me known to be a partner of_____, the partnership mentioned and described in and which executed the foregoing instrument, and the said partner duly acknowledged to me that he executed said instrument for and on behalf of and with the authority of the said partnership for the uses and purposes therein mentioned.

_____
Notary Public, State of


STATE OF NEW YORK    ) S.S.:
COUNTY OF            )

On the        day of         ,         , before me came
to me known who, being by me duly sworn, did depose and say that he resides at
that he is the        of        the
corporation described in, and which executed the foregoing instrument of guaranty; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed h name thereto by like order.

_____
Notary Public, State of


GP-F1201 (Rev. 9/99)

PLATZER, SWERGOLD, KARLIN,
LEVINE, GOLDBERG & JASLOW, LLP
*COUNSELORS AT LAW*

# EXHIBIT E

September 19, 2006

*Via Federal Express Overnight Delivery & Facsimile to (337) 463-0181*
Mr. Jerome N. Greenberg
549 Windgate Road
DeRidder, LA 70636

Re:   Loan, Security and Service Agreement dated October 8, 1999 between Sterling National Bank ("Lender") and Computer Solvers, Inc.

Guaranty of Obligations of Computer Solvers, Inc. owed to Lender and executed by Jerome N. Greenberg dated October 8, 1999 (the "Greenberg Guaranty")

Dear Mr. Greenberg:

Reference is made to the Greenberg Guaranty (as amended, modified and supplemented from time to time, together, the "Guaranty") made by you ("Guarantor") in favor of Lender pursuant to which Guarantor guaranteed to Lender the payment and performance of all obligations and indebtedness of Computer Solvers, Inc. (the "Borrowers") to Lender under various loan and security documentation between Borrowers and Lender (as amended, modified and supplemented from time to time, the "Loan Documentation").

Attached is a copy of the default letter delivered by Lender to Borrower based on various defaults under the terms of the Loan Documentation. The present amount now owing by Borrowers to Lender is $253,123 plus interest, fees and expenses (including, without limitation, attorneys' fees) accruing from July 1, 2006 through the date of actual payment to Lender (the "Outstanding Obligations").

Pursuant to the terms of the Guaranty, **demand is hereby made that the Outstanding Obligations be paid by Guarantor to Lender in immediately available funds not later than 10:00 a.m. (New York time) on September 29, 2006** at the following address: Sterling National Bank, 500 Seventh Avenue, New York, New York 10018-4502 Attn: Benjamin Katz.

Mr. Jerome N. Greenberg
September 19, 2006
Page 2

This letter is being sent as a courtesy on our part to allow you an opportunity to make payment and avoid the additional embarrassment and expense of litigation. Please understand that this is not just one in a series of demand letters; no other notices or demands will be given.

In the event payment of the Outstanding Obligations is not so timely remitted to Lender, please be advised that Lender will exercise its rights and remedies to collect same under the Guaranty and applicable law, including, without limitation, imposing the contractual late charges and the commencement of legal action against the Guarantor for the Outstanding Obligations (in which case we shall seek to recover not only the Outstanding Obligations, but the full amount due under the Loan Documentation, including, but not limited to, the costs of collection and attorney's fees incurred by Lender), all of which rights and remedies are hereby reserved and none of which are waived.

Be guided accordingly.

Sincerely,


Benjamin Katz

# STERLING NATIONAL BANK

500 SEVENTH AVENUE
NEW YORK, NY 10018-4502

PHONE:  212-575-2536
FAX:    212-764-0552
MOBILE: 917-992-3185

benjamin.katz@sterlingbancorp.com
www.sterlingbancorp.com

Credit Services Department
**Benjamin S. Katz**
First Vice President
Director of Credit Services

February 5, 2007

**Certified Mail - RRR and
First Class Mail**
Ms. Terri G. Noel
4614 Guam St.
Virginia Beach, VA 23455-1412

> Re: **Loan, Security and Service Agreement dated October 8, 1999 between Sterling National Bank ("Lender") and Computer Solvers, Inc.**
>
> **Guaranty of Obligations of Computer Solvers, Inc. owed to Lender and executed by Terri G. Noel dated October 8, 1999 (the "Noel Guaranty")**

Dear Mrs. Noel:

Reference is made to the Noel Guaranty (as amended, modified and supplemented from time to time, together, the "Guaranty") made by you ("Guarantor") in favor of Lender pursuant to which Guarantor guaranteed to Lender the payment and performance of all obligations and indebtedness of Computer Solvers, Inc. (the "Borrowers") to Lender under various loan and security documentation between Borrowers and Lender (as amended, modified and supplemented from time to time, the "Loan Documentation").

Attached is a copy of the default letter delivered by Lender to Borrower based on various defaults under the terms of the Loan Documentation. The present amount now owing by Borrowers to Lender is $253,123.00 plus interest, fees and expenses (including, without limitation, attorneys' fees) accruing from July 1, 2006 through the date of actual payment to Lender (the "Outstanding Obligations").

Pursuant to the terms of the Guaranty, **demand is hereby made that the Outstanding Obligations be paid by Guarantor to Lender in immediately available funds not later than 10:00 a.m. (New York time) on September 25, 2006** at the following address: Sterling National Bank, 500 Seventh Avenue, New York, New York 10018-4502 Attn: Benjamin Katz.



Mrs. Terri G. Noel
February 5, 2007
Page 2

This letter is being sent as a courtesy on our part to allow you one last opportunity to make payment and avoid the additional embarrassment and expense of litigation. Please understand that this is not just one in a series of demand letters; no other notices or demands will be given.

In the event payment of the Outstanding Obligations is not so timely remitted to Lender, please be advised that Lender will exercise its rights and remedies to collect same under the Guaranty and applicable law, including, without limitation, imposing the contractual late charges and the commencement of legal action against the Guarantor for the Outstanding Obligations (in which case we shall seek to recover not only the Outstanding Obligations, but the full amount due under the Loan Documentation, including, but not limited to, the costs of collection and attorney's fees incurred by Lender), all of which rights and remedies are hereby reserved and none of which are waived.

Be guided accordingly.

Sincerely,

*[signature]*

Benjamin Katz

# PLATZER, SWERGOLD, KARLIN,
# LEVINE, GOLDBERG & JASLOW, LLP
### COUNSELORS AT LAW

1065 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10018
TELEPHONE 212.593.3000
FACSIMILE 212.593.0353

WWW.PLATZERLAW.COM

PLAZA 1000 AT MAIN STREET,
SUITE 208
VOORHEES, NEW JERSEY 08043
TELEPHONE 856.782.8644

☐ *If checked, reply to New Jersey Office*

April 23, 2007

Ms Terri G Noel
4614 Guam Street
Virginia Beach, VA 23455

Re: Sterling National Bank
vs: Computer Solvers, Inc. and Jerome N Greenberg and Terri G Noel
Our File No. 1118-504
Amount of Claim: $ 456,249.01

Dear Ms. Noel:

Our office has been retained by Sterling National Bank to prosecute their claim against you in the above-referenced matter.

We must insist that payment be made immediately to the undersigned. Failing to receive payment within the next ten days, we will have no other alternative but to commence suit and seek recovery of the above balance, plus interest and court costs.

Very truly yours,

PLATZER, SWERGOLD, KARLIN,
LEVINE, GOLDBERG & JASLOW, LLP


Howard M. Jaslow

HMJ:kr

# PLATZER, SWERGOLD, KARLIN, LEVINE, GOLDBERG & JASLOW, LLP
### COUNSELORS AT LAW

1065 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10018
TELEPHONE 212.593.3000
FACSIMILE 212.593.0353

WWW.PLATZERLAW.COM

PLAZA 1000 AT MAIN STREET,
SUITE 208
VOORHEES, NEW JERSEY 08043
TELEPHONE 856.782.8644

☐ *If checked, reply to New Jersey Office*

April 23, 2007

Jerome N Greenberg
549 Wingate Road
DeRidder LA 70634

    Re:    Sterling National Bank
    vs:    Computer Solvers, Inc. and Jerome N Greenberg and Terri G Noel
           Our File No: 1118-504
           Amount of Claim: $ 456,249.01

Dear Mr. Greenberg:

    Our office has been retained by Sterling National Bank to prosecute their claim against you in the above-referenced matter.

    We must insist that payment be made immediately to the undersigned. Failing to receive payment within the next ten days, we will have no other alternative but to commence suit and seek recovery of the above balance, plus interest and court costs.

                         Very truly yours,

                         PLATZER, SWERGOLD, KARLIN,
                         LEVINE, GOLDBERG & JASLOW, LLP

                         Howard M. Jaslow

HMJ:kr