**PLATZER, SWERGOLD, KARLIN
LEVINE, GOLDBERG & JASLOW, LLP**
Attorneys for Plaintiff
1065 Avenue of the Americas, 18th Floor
New York, New York 10018
Tel:(212) 593-3000
Fax:(212) 593-0353
Linda Mandel Gates (LMG-4953)

File No. 1118-504

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
STERLING NATIONAL BANK

               Plaintiff,

    v.

COMPUTER SOLVERS INC.,JEROME
N. GREENBERG and TERRI G. NOEL a/k/a
TERRY LYNN GREENBERG

               Defendants.
----------------------------------------------------------x

Case No. 1:07-CV-8709 (RPP)

**AFFIRMATION IN SUPPORT
OF MOTION FOR SUMMARY
<u>JUDGMENT</u>**

      **Linda Mandel-Gates**, an attorney duly admitted to practice law before the courts

of the State of New York, affirms the following under penalties of perjury:

      1.      I am an associate of the firm Platzer, Swergold, Karlin, Levine, Goldberg &

Jaslow, LLP, the attorneys for Sterling National Bank ("Sterling"), the plaintiff herein, and

am fully familiar with the facts and circumstances herein by virtue of the records and

documents kept in the legal file maintained by this office. I certify to the best of my

knowledge, information and belief, formed after an inquiry reasonable under the

circumstances, the contentions made herein are not frivolous.

1

2.      Sterling instituted this action against Computer Solvers and the Guarantors, in order to recover monetary damages from Computer Solvers and the Guarantors representing the principal amount of a loan, plus accrued interest thereon, plus attorneys' fees and expenses pursuant to the express terms of the Loan and Guarantees, and the costs and disbursements of this action

3.      I submit this affirmation in support of the Plaintiff's motion for an Order: (1) pursuant to Rule 56 of the Federal Rules of Civil Procedure granting Sterling summary judgment against the Defendant, Jerome N. Greenberg ("Greenberg") for the relief demanded in Plaintiff's Complaint; (2) dismissing Greenberg's Answer on the grounds that there are no triable issues of fact and that judgment in favor of Sterling is warranted as a matter of law; (3) pursuant to Rule 55 of the Federal Rules of Civil Procedure directing the entry of a default judgment against Computer Solvers Inc. ( the "Corporate Defendant" or "Computer Solvers") and against Terry G. Noel (the "Noel") (Noel jointly with Greenberg referred to as the "Guarantors"), and (4) granting such other and further relief as the Court deems just and proper.

## I. INTRODUCTION

4.      This motion seeks an order granting summary judgment in favor of Sterling against Computer Solvers and the Guarantors as no triable issues of fact exist as to their respective liability for the amount due and outstanding to Sterling under the Security and Service Agreement dated October 8, 1999 (the "LSSA")and guarantees executed by each of the Guarantors (the "Guaranty"). As will be demonstrated herein and in the accompanying affidavit of Benjamin Katz, a First Vice President of Sterling (the "Katz Affidavit") and the accompanying Memorandum of Law (the "Memorandum), Greenberg

has failed to assert viable Affirmative Defenses in his Answer. Therefore, the Answer should be dismissed based upon the express terms and provisions of the LSSA and the Motion for Summary Judgment should be granted in favor of Plaintiff as against Greenberg. Defendants Computer Solvers and Noel have defaulted in answering; therefore, a default judgment should be entered against each of them.

## II. PROCEDURAL BACKGROUND

5.     This case was initiated with the filing of a summons and complaint ("Complaint") dated October 2, 2007. A copy of the Complaint and exhibits thereto is annexed hereto as Exhibit "A".

6.     Greenberg interposed his Answer with general denials and six (6) pro forma Affirmative Defenses, dated November 27, 2007. A copy of the Answer is annexed hereto as Exhibit "B".

7.     Defendants Computer Solvers, Inc. and Terri G. Noel have defaulted in answering the Complaint. The Clerk's Certificates of default are annexed hereto as Exhibit "C" and made a part hereof.

## III. COMPUTER SOLVERS DEFAULTED UNDER THE LSSA BY VIRTUE OF ITS FAILURE TO MAKE THE REQUIRED MONTHLY PAYMENTS AND ITS CESSATION OF BUSINESS OPERATIONS

## A. THE LOAN, SECURITY AND SERVICE AGREEMENT DATED OCTOBER 8, 1999

8.     As set forth in the Katz Affidavit, on or about October 8, 1999, the Corporate Defendant entered into a Loan, Security and Service Agreement ("LSSA") with the Plaintiff whereby the Corporate Defendant was granted a revolving line of credit by the Plaintiff. A copy of the LSSA is annexed to the Complaint as Exhibit "A".

9.     Paragraph numbered "1.1(b)(I)"of the LSSA provides, *inter alia,* that the

Corporate Defendant could borrow from the Plaintiff up to the Advance Limit defined therein in the aggregate amount of $500,000.00 or 75% of the amount of the Corporate Defendant's Eligible Receivables, as defined in the LSSA.

10.    Paragraph numbered "1.1(b)(ii)" of the LSSA provides, *inter alia*, that Plaintiff could, in its discretion, increase the amount of the Advance Limit.

11.    The LSSA provides for interest to be paid upon the outstanding balance in the amount of the greater of 18.5% or 10% above the Base Rate, as defined therein.

12.    The LSSA also provides, *inter alia*, that the Corporate Defendant granted Plaintiff a first priority continuing security interest in certain Collateral, as defined in Article numbered "2" of the LSSA, including but not limited to, the Corporate Defendant's inventory and account receivables.

13.    The LSSA also provides, *inter alia*, that:

> 7.    DEFAULT
> The occurrence of any of the following shall constitute an event of default ("Event of Default"):
> 7.1    Failure to Pay.  Failure to pay an Obligation or part thereof, including any installment of principal or interest or other charges due and owing to Lender ...when due;
> 7.2    Failure to Perform.   Failure to perform or abide by any covenant contained in this Agreement or the Relevant Documents;
> 7.3    Cross Default: Default on Other Debt.  The occurrence of any default on any obligation or indebtedness of ... any guarantor of Borrower ...
> 7.4    False Representation or Warranty.  The Borrower shall have made any representation or warranty in this Agreement ...which is at any time found to have been false in any material respect at the time such representations or warranty was made or thereafter.
> .
> .
> .
> 7.8    Change in Condition.  There occurs any change in the condition or affairs, financial or otherwise, of Borrower or of any endorser, guarantor of Borrower or surety for the liability of Borrower

to Lender which in the opinion of Lender impairs Lender's security
or increases its risk;

.
.
.

7.10     Insecurity. At any time the Lender deems itself insecure.

14.     As set forth in the Katz Affidavit, Events of Default have occurred with respect to the LSSA by virtue of, *inter alia*, the following, which defaults have occurred independently and cumulatively with respect to the Corporate Defendant and Guarantors:

(a)     Corporate Defendant's failure to pay all amounts due pursuant to the LSSA including but not limited to, repayment of Advances (as defined in the LSSA) and interest, following demand therefore and/or subsequent to the occurrence of other events requiring the payment in full of all sums outstanding under the LSSA;

(b)     Cessation of business operations of the Corporate Defendant, in violation of, inter alia, Sections 3.6 and 5.2;

(c)     Guarantor Greenberg's default of other obligations which have been declared in default and due prior to its date of maturity.

15.     By letter dated April 23, 2007, demand was made upon the Corporate Defendant for payment of its debt to the Plaintiff . A copy of the demand letter is annexed to the Complaint as Exhibit "B".

16.     As set forth in the Katz Affidavit, no part of the amount due and owing to the Plaintiff has been paid by the Corporate Defendant.

17.     As a result, the Corporate Defendant is in breach of the LSSA for failure to pay the amounts outstanding pursuant thereto, although duly demanded. As a result of the breach, there is due and owing as of June 6, 2008 the amount of $703,616.06, with interest continuing to accrue thereon from June 7, 2008, as set forth in the Katz Affidavit and

Exhibit "D" to the Motion.

18.    Pursuant to section "8.5" of the LSSA, the Corporate Defendant agreed to pay attorneys' fees in the amount of 15% of the Obligations, as defined, plus disbursements in the event of a default.

19.    As a result of the foregoing, the Corporate Defendant is indebted to the Plaintiff in the total amount of $703,616.06, with interest continuing to accrue thereon from June 7, 2008 to the date of entry of judgment herein at the rate of 18.5% per annum, plus attorneys' fees and expenses pursuant to the terms of the LSSA in the amount of $105,542.40, plus the costs and disbursements of this action.

## B. THE GUARANTEES AND GUARANTORS' LIABILITY

20.    As set forth in the Katz Affidavit, in consideration of the financial accommodations given or to be given by the Plaintiff to the Corporate Defendant and to induce the Plaintiff to extend or continue credit to the Corporate Defendant, on or about October 8, 1999, each of the Guarantors executed a guaranty (the "Guarantees"), copies of which are annexed to the Compliant as Exhibits "C" and "D", respectively.

21.    Each of the Guarantees provide, in pertinent part, that:

> [T]he undersigned [Guarantor] ... absolutely and unconditionally guarantee the full and prompt payment when due, by acceleration or otherwise, and at all times thereafter, to Bank, its successors, transferees, and assigns, of any and every liability or liabilities in any amount, of any nature and in any form, now existing or hereafter arising, of or from ... Obligor to Bank...whether absolute or contingent, direct or indirect, secured or unsecured...and any and all expenses including attorneys' fees... (Liabilities).

22.    The Guarantors each agreed that they would be jointly and severally liable to the Plaintiff for the Corporate Defendant's Liabilities, as defined in the Guarantees, to the Plaintiff.

23.    Demand letters were sent to the Guarantors on September 19, 2006,

February 5, 2007 and April 23, 2007. Copies of the demand letters are annexed to the Compliant collectively, as Exhibit "E".

24.    By virtue of the Corporate Defendant's default, as of June 6, 2008 the Guarantors are each liable to the Plaintiff in an amount of $703,616.06, with interest continuing to accrue thereon from June 7, 2008 to the date of entry of judgment, plus attorneys' fees in the amount of $105,542.40, and the costs and disbursements of this action.

## III. EACH OF GREENBERG'S AFFIRMATIVE DEFENSES ARE WITHOUT MERIT AND FAIL TO RAISE TRIABLE ISSUES OF FACT

25.    It is respectfully submitted that the Answer interposed by Greenberg containing with general denials and unsubstantiated Affirmative Defenses interposed by Greenberg do not raise material issues of fact necessary to defeat Plaintiff's Motion.

26.    Greenberg raises the following six (6) Affirmative Defenses within his Answer: (i) failure to mitigate damages, if any; (ii) failure to state a claim that has not been addressed by a purported settlement agreement between the Plaintiff and Greenberg; (iii) Estoppel;(iv) Waiver ; (v) Unclean Hands; (vi) Laches.

27.    At the outset it is respectfully submitted that Greenberg's Affirmative Defenses must be dismissed as a matter of law, since he executed the Guaranty which is absolute and unconditional. In addition, the Affirmative Defense of Laches must be waived because Greenberg expressly waived defense of Laches.

28.    The Guaranty sets forth _inter alia_, that:

> The liability of Guarantor under this Guaranty shall be _absolute and unconditional_ irrespective of any lack of validity, regularity or enforceability of the Obligation or any note , instrument or agreement evidencing the same or relating thereto, the acceptance of additional guarantees or collateral or the termination, by operation of law or otherwise, of the ability of anyone with respect to the Obligations, or any other circumstance which may otherwise constitute a defense available to, or a discharge of the Borrower.

> Guarantor hereby waives the right to interpose any defense
> based upon any claim of laches or set-off or counterclaim of any
> nature or description, any objection based on forum non
> convenience or venue, and any claim for consequential, punitive
> or special damages.

29 .    Greenberg, as well as Noel, each guaranteed to the Plaintiff, <u>absolutely and</u> <u>unconditionally, the payment of any and all indebtedness</u> from the Corporate Defendant to the Plaintiff.

30.    The First Affirmative Defense alleges that Plaintiff's claim should be barred because the Plaintiff has allegedly failed to mitigate it's damages.    It is respectfully submitted that Greenberg's First Affirmative Defense is not supported by any substantive facts and does not even begin to properly demonstrate the basis for such defense. In the case at hand, the Plaintiff is the Lender and the Corporate Defendant is the Borrower. Therefore, upon Borrower's default the Lender's damages can not be mitigated unless the Borrower remits the outstanding, overdue balance. Therefore, Greenberg's First Affirmative Defense is frivolous and like the other affirmative defenses, is pleaded by Greenberg as part of the "boilerplate" affirmative defenses set forth in his Answer.

31.    Greenberg's Second Affirmative Defense alleges that Plaintiff's allegations fail to state a claim because it is purportedly precluded by an alleged settlement agreement between the Plaintiff and the Defendant. However, Greenberg has failed to introduce <u>any</u> evidence with respect to the purported settlement agreement . If in fact there was a settlement agreement executed by these parties which included a release as to these obligations one would expect that Greenberg would include a copy as an exhibit to his Answer. The fact that Greenberg has neither pleaded the facts of this purported settlement nor annexed a copy to his Answer demonstrates that this is a fiction. Consequently,

Greenberg's Second Affirmative Defense should be dismissed.

32.    Greenberg's Third Affirmative Defense of estoppel is not supported by any substantive facts and does not even begin to properly demonstrate the basis for such defense. As more fully set forth in the accompanying Memorandum of Law, in order to support a defense of estoppel, the party asserting the estoppel defense must allege facts showing in what manner and to what extent a defendant relied on a plaintiff's inconsistent conduct and was prejudiced thereby. Greenberg has completely failed to plead the predicate for estoppel.

33.    As more fully set forth in the accompanying Memorandum of Law, New York courts have been clear that defenses which merely plead conclusions of law without supporting facts are insufficient. As such, Greenberg's Fourth, Fifth and Sixth Affirmative Defenses are blatantly insufficient, containing only mere conclusions of law and no facts or elements of the defense to support Greenberg's allegations.

34.    No prior application has been submitted for the relief sought herein.

## IV. CONCLUSION

35.    Based upon the foregoing, it is submitted that there are no issues of fact for the Court to determine with regards to Plaintiff's claims against Computer Solvers and the Guarantors.

**WHEREFORE**, your Plaintiff respectfully requests that the Court grant an Order:

(1) pursuant to Rule 56 of the Federal Rules of Civil Procedure granting summary judgment against Greenberg for the total amount of **$703,616.06** with interest continuing to accrue thereon from June 7, 2008 to the date of entry of judgment at the rate of 18.5% per annum, plus attorneys' fees in the amount of $105,542.40 and expenses pursuant to the terms of the Guaranty, and the costs and disbursements of

this action;

(2) pursuant to Rule 55 of the Federal Rules of Civil Procedure directing the entry of a default judgment  against Computer Solvers Inc. and against Noel for the total amount of **$703,616.06** with interest continuing to accrue thereon from June 7, 2008 to the date of entry of judgment at the rate of 18.5%, plus attorneys' fees in the amount of $105,542.40, and expenses pursuant to the terms of the LSSA and Guarantees, and the costs and disbursements of this action; and

(3) such other and further relief as the Court deems just and proper.


Dated: New York, New York
     July 1, 2008

**Linda Mandel Gates** (4953)